## THE DOMESTIC BUILDING ASSOCIATION

*v.*

### WALTER C. NELSON *et al.*

*Opinion filed April 21, 1898.*

1. PLEADING—*averment in bill to foreclose that a certain lot had been released is conclusive.* Where a bill to foreclose a mortgage covering a number of lots avers that certain of them had been released from the lien of the mortgage, a finding by the master that one of the lots so named had not been released, and a decree and sale of the same thereunder, are erroneous.

2. SAME—*defendant may appeal where bill avers his interest.* An averment in a bill to foreclose a mortgage covering a number of lots, that the defendants have or claim some interest in the premises, is an averment as to the entire premises described in the mortgage, and any defendant so named as having an interest, who has answered or been defaulted, may assign as error the inclusion in the order of sale of a lot averred by the bill to have been released.

3. APPEALS AND ERRORS—*when Appellate Court may reverse foreclosure decree as to one lot and affirm as to others.* Where, on appeal to the Appellate Court from a foreclosure decree and sale, it appears that a certain lot which the bill averred had been released was included among those sold under the decree, it is proper for that court to reverse the decree as to the sale of such lot, and, no other error appearing, to affirm the decree as to the sale of the others.

4. MORTGAGES—*when trust deed covering several lots is not distinct as to each.* A provision in a trust deed by which the lots covered thereby may be released upon payment of not less than a specified sum, does not constitute it, in legal effect, a separate mortgage upon each lot, securing separate and distinct sums of money.

5. SAME—*when trust deed does not require apportionment of amount found due on foreclosure.* A provision in a trust deed for the release of the various lots covered thereby upon the payment of not less than a specified sum on each lot, in accordance with which many of the lots are so released, does not require that upon foreclosure the amount found due shall be apportioned among the several lots.

6. FORECLOSURE—*when foreclosure decree properly charges lots in inverse order of alienation.* Where a trust deed provides for the release of the lots covered thereby upon payment of a specified sum, in accordance with which a number of them are so released, upon foreclosure a decree which orders the lots still owned by the mortgagor to be first sold, and the others, not released, in the inverse order of their alienation, is proper.

7. PRACTICE—*party in court must take notice of progress of case.* In the absence of a rule of court to the contrary, one who is in court by service of process or appearance is bound to take notice of all subsequent action on the part of the court.

*Domestic Building Ass.* v. *Nelson*, 66 Ill. App. 601, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on writ of error to the Superior Court of Cook county; the Hon. WILLIAM G. EWING, Judge, presiding.

VICTOR ELTING, and E. T. NOONAN, (L. M. PAINE, of counsel,) for appellant.

HENRY W. WOLSELEY, for appellees.

Mr. CHIEF JUSTICE PHILLIPS delivered the opinion of the court:

May 18, 1891, Mary Nelson filed her bill of complaint in the Superior Court of Cook county, against appellant and others, to foreclose a trust deed executed by Frank C. Delamater to Henry B. Freeman, as trustee, made in 1883, and given to secure the payment of four promissory notes to the amount of $3125 each, and payable, respectively, one, two, three and four years after date, with interest at six per cent per annum. These notes were for the purchase money of the premises described in the trust deed, being eighty-one lots in Crosby's subdivision to Maplewood, in Cook county, Illinois. The first three notes were paid and part of the fourth note, and the bill alleged that of the principal sum there was yet due $2125, with interest, and further sums for taxes paid, solicitor's fees and costs. The trust deed contained the usual covenants, and in addition it provides as follows: "It is hereby agreed that any of said lots shall be released from the lien upon the payment of not less than $200 per lot, provided that the payment for lots north of the railroad shall not be for less than $150, and lots on Boulevard and

Fullerton avenues at $250 each." The Domestic Building Association, appellant, and forty or more others, were made defendants with the principal defendant, Frank C. Delamater, the averments of the bill being that the defendants had or claimed some interest in the premises as purchasers, mortgagees, judgment creditors or otherwise, which had accrued subsequently to the lien of the trust deed and subject thereto. On the 19th day of December, 1891, the complainant filed an amendment to her bill, alleging that a large number of lots described in the original bill had been released from the trust deed, and among the lots said to have been released was lot 33, in block 25.

The Domestic Building Association and forty other defendants entered appearances, eight of whom filed answers and the others were defaulted, including the appellant, and the cause was referred to the master to take proof and report his conclusions. The master's report. found that the material allegations of the bill were sustained, and all of the lots covered by the trust deed had been released from the lien of the same with the exception of twelve lots, among which was named lot 33, in block 25, and that the amount due the plaintiff on account of the trust deed, with solicitor's fees and costs, was $2384.32. The report further found an agreement to release lots on payment as stipulated, and that under that provision all the lots mentioned and described in the trust deed had been released except twelve lots, (describing them,) including lot 33, and that releases were made in consideration of proportional payments.

Mary Nelson having died in 1894, the appellees were substituted as parties complainant. Exceptions were interposed to the master's report, which were overruled, and a decree was entered, in accordance with the prayer of the bill, for a sale of the twelve lots, or so many of them as might be necessary, and that they be sold separately and in the order named in the decree, the first lot being that still owned by Frank C. Delamater, the mort-

gagor, and the others in the inverse order of their alienation. A sale was made in accordance with the decree, and a report filed and an order of distribution made, which was approved and confirmed by the court. The report shows the sale of eight lots, including lot 33, in block 25, to the complainants, and one lot to a third person. The lots were sold for different amounts, lot 33 being sold for $700. The Domestic Building Association sued out a writ of error to the Appellate Court for the First District, where the final judgment of that court was entered reversing the decree as entered for the sale of lot 33, in block 25, and affirming the sale as to the residue, without remanding the cause. The Domestic Building Association prosecutes an appeal to this court, and insists that it was error for the Appellate Court to order a reversal of the decree of the Superior Court in part, and not to apportion in the decree the indebtedness upon each of the lots which had not been released from the lien of the trust deed, and urges that appellant did not receive notice of the motion to default or of the proceedings before the master in chancery.

It having been alleged in the bill of complaint that lot 33 had been released from the lien of the deed of trust, the finding of the master, the decree and the sale of that lot were error. The bill having averred that Frank C. Delamater, the Domestic Building Association and forty other defendants had or claimed some interest in the mortgaged premises, by mortgage or judgment lien, or otherwise, that was an averment with reference to all the premises described in the mortgage, and a default having been entered as to all but eight of the defendants, under the averments of the bill any party defendant thus named in the bill with interest would have a right to assign error on the inclusion of that lot in the decree and sale, as the parties to the decree were bound thereby. The decree provided for the sale of lot 33, among others, and the lot has been actually sold under

the decree for the sum of $700. This was error. The judgment of the Appellate Court could properly be that the decree with reference to the sale of that particular lot might be reversed and affirmed as to the sale of the residue. No cross-errors being assigned and nothing appearing to show the appellant was or could be in any manner injured by the affirmance of the sale as to the residue of the lots, we hold that on this branch of the case there was no error in the judgment of the Appellate Court.

The provision of the trust deed that lots could be released from the trust deed upon the payment of not less than $200 per lot, provided the lots north of the railroad should not be released for less than $150 and lots on Boulevard and Fullerton avenues should not be released for less than $250, did not require that the amount due should be apportioned on the several lots. The condition of the deed of trust was that the purchase money was to be paid and releases made of numerous lots, but, where no payment had been made of the residue of the sum, the beneficiary in the deed of trust was not called upon to have the amount apportioned among the several lots. The complainant had done nothing to estop her from insisting on her contract. There was no payment, or offer of payment, of any portion of the indebtedness still existing by any owner of any particular lot. Nor will the terms and conditions of this deed of trust with reference to a release of lots constitute it, in legal effect, a separate and distinct mortgage to secure separate and distinct sums of money. It was one transaction, and the provision as to release of mortgage as to any specified lot was conditioned on payment, and by selling the lot still held by the mortgagor, and the subsequent lots in the order of their alienation, a distinct equitable principle was applied, of which the appellant in this case has no cause to object.

The objection that is taken by the appellant upon the alleged fact that appellant was defaulted without notice,

and upon the further assumed fact that it had no notice
of the proceedings before the master, cannot affect this
judgment of the Appellate Court, for the reason the rec-
ord is silent as to whether the appellant or its solicitor
had notice, and by the entry of appearance the defendant
was compelled to take notice of all subsequent action on
part of the court, in the absence of a rule of court requir-
ing notice, and no rule of that character is incorporated
in the record. No error, therefore, appears from the want
of notice of the proceedings before the master or of the
default. *Niehoff* v. *People*, 171 Ill. 243.

The judgment of the Appellate Court for the First
District is affirmed. *Judgment affirmed.*